UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELA RENEE LEWIS,<br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>                Defendant. | Case # 1:18-cv-150-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Angela Renee Lewis ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No.10) is **DENIED**, and the Commissioner's motion (ECF No. 12) is **GRANTED**.

## BACKGROUND

On April 9, 2014, Plaintiff protectively filed her SSI application, alleging a disability beginning on July 1, 2012 (the disability onset date), due to Crohn's disease; a bladder problem; rheumatoid arthritis; migraines; an ovarian cyst; acid reflux; carpal tunnel syndrome; back and neck pain; post-traumatic stress disorder ("PTSD"); anxiety; depression; obsessive compulsive disorder; and insomnia. Transcript ("Tr.") 203. Plaintiff's claim was denied initially on August 28,

2014. (Tr. 102), after which she requested an administrative hearing. Plaintiff's hearing was held before Administrative Law Judge Lynette Gohr (the "ALJ") on September 6, 2016, in Buffalo, New York. Tr. 20-30. Plaintiff's non-attorney representative appeared at the hearing; however, Plaintiff did not appear. Tr. 20. A Notice to Show Cause was sent to Plaintiff on September 13, 2016 (Tr. 156), to which Plaintiff responded that she confused the date of the hearing (Tr. 159). The ALJ determined that this was not good cause, and therefore, Plaintiff had waived her opportunity to appear at the hearing. Tr. 20. Timothy Mahler, a vocational expert ("VE"), also appeared and testified at the hearing. Tr. 35. Additional evidence submitted at the hearing was accepted and entered into the record without objection, including a substantial amount of additional medical evidence (*see* Tr. 274-759). Tr. 20. Additional evidence was also entered into the record after the hearing (Tr. 258-274) and considered by the ALJ in making her decision. Tr. 20.

The ALJ issued an unfavorable decision on November 28, 2016, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. Tr. 20-30. On November 28, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-4. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her November 28, 2016 decision:

1. The claimant has not engaged in substantial gainful activity since April 9, 2014, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, diabetes, obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD") (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant is limited to frequent stooping, kneeling, crouching, and crawling. She is further limited to simple, routine tasks and simple work-related decisions;

5. The claimant is capable of performing past relevant work as an agricultural packer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965);

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 9, 2014, the date the application was filed (20 CFR 416.920(f)).

Tr. at 23-29.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on April 9, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id.* at 30.

## **ANALYSIS**

Plaintiff's sole argument is that the ALJ did not properly account for her moderate limitations in dealing with stress and suggests that stress might trigger her physical symptoms. *See* ECF No. 10-1 at 16-20. In finding that Plaintiff was not disabled, the ALJ determined that she could perform medium work except that she was limited to frequent stooping, kneeling, crouching, and crawling. Tr. 25. She further limited Plaintiff to simple, routine tasks and simple work-related decisions. Tr. 25. *See* 20 C.F.R. § 416.927. Plaintiff disagrees with the ALJ's discussion of the opinion of consultative examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano") (Tr. 611-15), and suggests that, in formulating her RFC finding, the ALJ failed to consider Dr. Fabiano's opinion that Plaintiff had moderate limitations in appropriately dealing with stress. *See* ECF No. 10-1 at 16-20. As discussed below, the Court finds Plaintiff's arguments lack merit.

It is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions

of medical sources cited in his decision." *Id*. Further, where the record contains sufficient evidence from which an ALJ can determine the RFC, a medical source statement or formal medical opinion may not be necessary. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (citing *Rosa*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . .") (internal citations and quotation marks omitted).

The ALJ here did not determine the RFC in a vacuum. She properly analyzed the medical and opinion evidence in determining Plaintiff's RFC. Tr. 25-30. Contrary to Plaintiff's arguments (*see* ECF No. 10-1 at 16-20), the ALJ properly and fully evaluated Dr. Fabiano's consultative opinion. Tr. 28-29, 611-15. Plaintiff acknowledges that the ALJ considered Dr. Fabiano's opinion and gave it significant weight. *See* ECF No. 10-1. at 13; Tr. 28-29. However, Plaintiff contends that the ALJ failed to explain, account for, or discuss in detail, Dr. Fabiano's conclusion that Plaintiff was moderately limited in her ability to deal with stress. *See* ECF No. 10-1. at 13. The Court disagrees.

On August 5, 2014, Plaintiff attended a consultative psychiatric examination with Dr. Fabiano. Tr. 611-15. Plaintiff took the bus to her appointment, a distance of approximately five miles. Tr. 611. Plaintiff lived alone in an apartment and had an 11-year-old daughter who did not live with her. *Id*. Plaintiff reported a dysphoric mood, and she stated she was being stalked by the person who raped her, and she was also experiencing disruptive sleep and an inconsistent appetite. Tr. 612. Plaintiff denied suicidal or homicidal ideation but reported that she experienced anxiety. *Id*. She stated she had palpitations, dizziness, breathing difficulties, and chest pain that occurred approximately once a month, and which were triggered by stress. *Id*. Plaintiff also stated she had

6

some problems with concentration, and she denied any problems with drug or alcohol abuse presently or in the past. *Id*.

On examination, Plaintiff's demeanor and responsiveness to questions was cooperative. Tr. 612. Her manner of relating, social skills, and overall presentation were adequate. *Id*. Her motor behavior was normal, and she showed appropriate eye contact. Tr. 613. Plaintiff's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. *Id*. Her mood was neutral and affect flat; her attention and concentration and recent and remote memory skills were intact; her insight and judgment were good; and she was fully oriented to person, place, and time. Tr. 613. Dr. Fabiano diagnosed unspecified depressive disorder; unspecified anxiety disorder; and rule out PTSD. Tr. 614.

The ALJ explained that she gave significant weight to Dr. Fabiano's opinion because it was consistent with the record. Tr. 27. The ALJ also acknowledged Plaintiff's depression, anxiety, and PTSD. Tr. 25-29. In addition to stating Plaintiff was moderately limited in her ability to deal with stress, Dr. Fabiano opined that Plaintiff did not appear to have any limitations in her ability to follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; perform complex tasks independently; and make appropriate decisions. Tr. 614. The ALJ accordingly considered those limitations in her RFC finding limiting Plaintiff to simple, routine tasks and simple work-related decisions. Tr. 25. Further, the ALJ also stated that Dr. Fabiano's opinion was consistent with evidence in the record reflecting that Plaintiff had few limitations in her activities of daily living and noted evidence that Plaintiff engaged in work activities while under her presumptive disability. Tr. 27. Thus, Plaintiff's argument that the ALJ failed to explain the weight she assigned to Dr. Fabiano's opinion lacks merit.

Plaintiff's contention that the ALJ erred in not explaining why she failed to include a moderate limitation regarding stress in the RFC also fails. The ALJ did not afford controlling weight to Dr. Fabiano's consultative opinion, and she was not required to include all of the doctor's assessed limitations in the RFC. Tr. 28-29, 611-15. Further, although an ALJ must explain why a medical opinion conflicting with the RFC was not adopted, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' and there is no 'absolute bar to crediting only portions of medical source opinions.'" *See Cosme v. Colvin*, 15-CV-6121P, 2016 WL 4154280, at *11 (W.D.N.Y. Aug. 5, 2016) (citing *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) and *Younes v. Colvin*, No. 1:14-CV-170 DNH/ESH, 2015 WL 1524417, at *1 (N.D.N.Y. Apr. 2, 2015)) (internal citations omitted).

Notably, "none of Plaintiff's doctors indicated that she could not handle any stress at all." *See Townsend v. Berryhill*, No. 1:16-cv-00406-MAT, 2017 WL 5375038, at *5 (W.D.N.Y. Nov. 14, 2017). Moreover, Plaintiff cites no controlling authority holding that a moderate limitation in dealing with stress requires an ALJ to entirely preclude a claimant from dealing with work stress in the RFC. *See* ECF No. 10-1 at 16-20. Although Plaintiff cites to *Brink v. Colvin*, No. 14-CV-00940, 2017 WL 2531711 (W.D.N.Y. June 12, 2017), to support her argument, other courts have found that RFC formulations not containing any explicit stress limitation could account for difficulties handling stress. *See Reyes v. Colvin*, 14-CV-734-JTC, 2016 WL 56267, at *6 (W.D.N.Y. Jan. 5, 2016) (upholding RFC finding that lacked a specific stress limitation where ALJ gave significant weight to consultative opinion finding Plaintiff had moderate stress limitations); *Cowley v. Berryhill*, 16-CV-6811L, 2018 WL 2253123, at *2–3 (W.D.N.Y. May 17, 2018) (RFC for simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate accounted for doctor's

8

opinion that claimant was moderately limited with respect to stress); *Slattery v. Colvin*, 111 F. Supp. 3d 360, 373–75 (W.D.N.Y. 2015) (RFC's limitation to unskilled work involving simple instructions where interactions with others are routine, superficial, and incidental to the work performed was consistent with doctor's opinion that claimant would have difficulty dealing with stress).

It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, including stress. *See Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), appeal dismissed (Mar. 30, 2018); *Martinez v. Commissioner*, 2017 U.S. Dist. LEXIS 93575 at *20–*21 (N.D.N.Y. 2017) (collecting cases, and noting that the "Second Circuit has held that moderate limitations in work related functioning [including handling stress, making appropriate decisions, relating adequately with others, and dealing with stress] does not significantly limit, and thus prevent, a plaintiff from performing unskilled work"); *Saxon v. Colvin*, 2015 U.S. Dist. LEXIS 83447 at *14 (W.D.N.Y. 2015) (moderate limitations in ability to make appropriate decisions, relate adequately with others, and cope with stress are sufficiently accommodated by an RFC limited to routine tasks in a low stress, low contact environment). Here, Plaintiff's past relevant work, as well as other jobs identified by the VE at step 5 of the ALJ's analysis, amounted to unskilled work. The ALJ limited Plaintiff to simple routine tasks and simple work-related decisions, which the ALJ took into account based on the opinion of Dr. Fabiano. Thus, the Court finds that simple tasks and simple work-related decisions, as limited here by the ALJ, perforce incorporate moderate limitations with respect to stress. *See Thomas v. Berryhill*, 337 F. Supp. 3d 235, 245 (W.D.N.Y. 2018).

Further, the ALJ here properly considered other evidence in the record, which supported the ALJ's RFC finding. Specifically, the ALJ properly concluded that Plaintiff's activities of daily

living conflicted with her allegations of disabling symptoms, as she could manage her own personal care, cook, do dishes and laundry, clean, mop the floor, dust, vacuum, go shopping, and go out on a boat with family and friends. Tr. 27, 218-21. Her hobbies included watching television, exercising, traveling, playing games with family, and reading. Tr. 220. She attended social groups and narcotics anonymous seven days a week and counseling six times a month. Tr. 221. She reported no problems with authority and no problems getting along with family, friends, or neighbors. Tr. 221, 223. She enjoyed going to the science museum, the art museum, and visiting Florida. *Id*. With respect to her stress-triggered palpitations, dizziness, breathing difficulties, and chest pain, Plaintiff told Dr. Fabiano that these episodes only occurred once a month. Tr. 612.

On June 18, 2014, Plaintiff completed a Function Report, wherein she confirmed many of the activities of daily living and social activities noted above. Tr. 216-29. She stated that she lived alone in an apartment; (Tr. 216); she could manage her personal care (Tr. 217-18); she loved to cook and prepared foods compliant with her Crohn's disease and interstitial cystitis (Tr. 218); and she could perform household chores such as washing dishes, laundry, mopping floors, cleaning the walls, scrubbing her tub, dusting, vacuuming, and sweeping (Tr. 219); She went outside every day and used public transportation. Tr. 219. She also stated she could drive her boyfriend's car and manage money, and she shopped approximately three times per month. Tr. 220. In terms of her hobbies, Plaintiff said that, without a good income, she could no longer travel as much, skate, bike, rollerblade, and go out dancing at clubs with friends (Tr. 220), even though she also reported anxiety, not income, cut into her dancing (Tr. 221).

Based on the foregoing, the Court finds that the RFC was properly determined, and if there was any error with respect to stress-related limitations, such was harmless error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE